Danielle L. Perry (SBN 292120)
dperry@wbmllp.com
Gary E. Mason (*pro hac vice forthcoming*)
gmason@wbmllp.com
**WHITFIELD BRYSON & MASON, LLP**
5101 Wisconsin Ave. NW, Ste. 305
Washington, DC 20016
Tel: 202-640-1168
Fax: 202-429-2294

*Attorneys for Plaintiffs*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVANGELINA AIROSO, SANDRA BOWERS, and ALAINA GARCIA, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> DEVA CONCEPTS, LLC, d/b/a DevaCurl, <br><br> Defendant. | **CASE NO.** <br><br> **CLASS ACTION COMPLAINT FOR:** <br><br> 1. **MAGNUSON-MOSS WARRANTY ACT** <br> 2. **BREACH OF EXPRESS WARRANTY** <br> 3. **BREACH OF IMPLIED WARRANTY** <br> 4. **UNJUST ENRICHMENT** <br> 5. **NEGLIGENT FAILURE TO WARN** <br> 6. **NEGLIGENT FAILURE TO TEST** <br> 7. **VIOLATION OF CALIFORNIA LEGAL REMEDIES ACT, Cal. Bus. & Prof. Code § 1750, *et seq.*** <br> 8. **VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, Cal. Bus. & Prof. Code § 17200, *et seq.*** <br> 9. **VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW, Cal. Bus. & Prof. Code § 17500, *et seq.*** |

## CLASS ACTION COMPLAINT

Plaintiffs Evangelina Airoso, Sandra Bowers, and Alaina Garcia ("Plaintiffs") bring this Class Action Complaint against Defendant Deva Concepts, LLC, d/b/a DevaCurl ("Defendant"), individually and on behalf of all others similarly situated, and complain and allege upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their attorneys:

## NATURE OF THE ACTION

1. This is a civil class action brought by Plaintiffs on behalf of consumers who purchased Defendant's "DevaCurl No-Poo Original" non-lathering conditioning cleanser (the "No-Poo Product"), DevaCurl One Condition® Original hair-conditioner, DevaCurl Light Defining Gel, DevaCurl Low-Poo Original cleanser, DevaCurl Low-Poo Delight cleanser, DevaCurl No-Poo Decadence cleanser, DevaCurl One Condition® Delight hair-conditioner, DevaCurl One Condition® Decadence hair-conditioner, Melt into Moisture Mask, Styling Cream, DevaCurl Leave-In Decadence conditioner, Super Stretch Coconut Curl Elongator, Wavemaker, and DevaCurl Ultra Defining Gel (collectively "the Products"), which are used for personal cosmetic purposes. Plaintiffs seek damages and equitable remedies for themselves, and for the Class and California Subclass (defined *infra* ¶¶ 86-87).

2. Defendant formulates, manufactures, advertises, and sells the Products to consumers throughout the United States, including in the State of California.

3. In 2002, Defendant created and developed the formula for the DevaCurl No-Poo Original, which is marketed as containing no sulfate, and is also marketed as an "innovative new haircare category" and a "game-changing alternative to traditional shampoo."[1]

---

[1] https://www.devacurl.com/us/curl-101/our-story

CLASS ACTION COMPLAINT

4.      Defendant further markets the No-Poo Product as a "first-of-its-kind, no-suds conditioning cleanser" that is "free of sulfates, parabens, and silicones" and that is used "to gently cleanse curls without stripping the natural oils they need to look healthy, bouncy and simply gorgeous."[2]

5.      One of the founders of DevaCurl was quoted as saying that the No-Poo Product "allows your scalp to regulate, and your hair to become more what nature intended."[3]

6.      Consumers purchase Defendant's No-Poo Product because it does not contain sulfate, and because of Defendant's marketing, which claims that the No-Poo Product "allows your scalp to regulate, and your hair to become more of what nature intended."[4]

7.      Consumers seek out the No-Poo Product because it provides maximum frizz prevention and slows color fading.[5]

8.      Defendant and publications have suggested that those with curly hair should not use shampoo because it dries out peoples' curls when their hair is being washed.[6]

9.      The No-Poo Product was touted as the answer to this age-old issue and does not contain lather, or any of the sulfates found in shampoos that dry out curls.[7]

10.     DevaCurl's No-Poo Product has been deemed (by Defendant) the shampoo that still moisturizes and is made with a peppermint scent.[8]

11.     Many have used the No-Poo Product as a complete shampoo replacement once or twice a week to cleanse hair rather than using traditional shampoo.[9]

---

[2] *Id.*
[3] https://www.nytimes.com/2010/09/30/fashion/30Skin.html (last visited Jan. 13, 2020).
[4] *Id.*
[5] https://www.amazon.com/gp/product/B0030LF1KA?pf_rd_p=ab873d20-a0ca-439b-ac45-cd78f07a84d8&pf_rd_r=7JK77ENMJZXVFMJHKQWJ, (last visited Jan. 13, 2020).
[6] http://nymag.com/strategist/article/best-curly-hair-products-review-devachan-no-poo-conditioner.html. (last visited Jan.13, 2020).
[7] *Id.*
[8] *Id.*

CLASS ACTION COMPLAINT

12.    Therefore, consumers seeking a complete alternative to traditional shampoo end up purchasing the No-Poo Product. Consumers pay a premium over the cost of traditional retail and salon shampoos for the No-Poo Product, based upon the representations above.

13.    However, despite the "DevaCurl phenomenon" that has caused many curly haired consumers across the United States to purchase and use the Products, use of the Products cause scalp irritation, excessive shedding, hair loss, thinning, breakage, and/or balding during normal use by consumers.

14.    Indeed, thousands of consumers have reported their hair failing out shortly after or during actual use of the Products.

15.    Defendant provides no warning about these consequences, and in fact makes numerous assertions about the gentle and beneficial nature of the Products. For example, Defendant's website makes statements relating to its No-Poo Product such as "[t]raditional shampoo can be too harsh for curls. That's why we made No-Poo Original! The non-lathering formula with peppermint and grapeseed oil gently cleanses without stripping the natural oils your curls need."[10] With regard to its One Condition® Original product, Defendant's website states "When it comes to curls, it's all about condition, condition, condition. So apply, rinse and repeat as often as needed!"[11] These statements and others were and are false, deceptive, and misleading and have harmed Plaintiffs and the Class.

16.    Disturbingly, Defendant appears to be aware of the issues with its Products but conceals and fails to disclose that the Products cause hair loss and shedding, by intentionally blaming other risk factors such as giving birth, stress, scalp buildup, dandruff, losing weight, certain illnesses, and more.[12]

---

[9] https://www.glamour.com/gallery/best-curly-hair-products (last visited Jan. 13, 2020).
[10] https://www.devacurl.com/us/products/cleansers/no-poo-original/v/29976784174230
[11] https://www.devacurl.com/us/products/conditioners/one-condition-original/v/29778541346898
[12] https://www.devacurl.com/blog/hair-shedding-101/

CLASS ACTION COMPLAINT

17.    Defendant conceals and fails to disclose the defective nature of its Products by actively misleading consumers into believing that the hair loss and shedding caused by the Products is "normal" and "common," that even excessive shedding of over 100 strands of hair per day is "common," and that shedding is not preventable.[13]

18.    Defendant unambiguously has knowledge of the hair loss and scalp irritation caused by the Products. For example, Defendant has received multiple FDA complaints of hair loss and scalp irritation beginning in February 2018. There have been hundreds of complaints posted on social media sites like Facebook. Social media influencers have spread the word about the hair loss and scalp irritation caused by Defendant's Products. Major media outlets including the ABC television affiliate in New York City have broken the story.[14] Defendant has explicitly acknowledged the reports of hair loss and scalp irritation associated with its products, going so far as to post an explanatory statement on its website, prominently featured with a link entitled "a message for our devas" in the top right corner of the website's homepage.[15]

19.    Despite notice and knowledge of the problems caused by the Products, Defendant has not recalled the Products, has not provided any warnings of the known risks, has denied that the Products cause the reported health issues, and has not offered its customers any compensation for their damages.

20.    Had Plaintiffs and other Class Members known that Defendant's Products would cause hair loss, scalp irritation and other problems, they would not have purchased the Products.

21.    Plaintiffs and each of the Class Members have been damaged and suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and

---

[13] *Id.*
[14] https://abc7ny.com/health/customers-say-curly-styling-products-made-their-hair-fall-out/5906690/
[15] https://www.devacurl.com/us/deva-community-statement

1   misleading practices as set forth herein by Defendant and seek compensatory damages
2   and injunctive relief.

3          22.    Given the massive quantities of the Products sold all over the country,
4   this class action is the proper vehicle for addressing Defendant's misconduct and for
5   attaining needed relief for those affected.

6                          **JURISDICTION AND VENUE**

7          23.    This Court has subject matter jurisdiction over this action pursuant to 28
8   U.S.C. §§ 1332 & 1367 because this is a class action in which the matter or
9   controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and in
10  which some members of the proposed Classes are citizens of a state different from
11  Defendant.

12         24.    This Court has personal jurisdiction over Defendant because it transacts
13  business in the United States, including in this District, has substantial aggregate
14  contacts with the United States, including in this District, engaged in conduct that has
15  and had a direct, substantial, reasonably foreseeable, and intended effect of causing
16  injury to persons throughout the United States, and purposely availed itself of the laws
17  of the United States.

18         25.    In accordance with 28 U.S.C. § 1391, venue is proper in this District
19  because a substantial part of the conduct giving rise to Plaintiffs' claims occurred in
20  this District, Defendant transacts business in this District, and at least one Plaintiff
21  resides in this District.

22                                  **PARTIES**

23         26.    Plaintiff Evangelina Airoso is a resident of Fresno, California who has
24  purchased and used DevaCurl Products within the relevant time period. Plaintiff
25  Airoso experienced scalp irritation and hair loss after using DevaCurl Products.

26         27.    Plaintiff Sandra Bowers is a resident of Ridgecrest, California who has
27  purchased and used DevaCurl Products within the relevant time period. Plaintiff
28  Bowers experienced scalp irritation and hair loss after using DevaCurl Products.

28.    Plaintiff Alaina Garcia is a resident of San Pedro, California who has purchased and used DevaCurl Products within the relevant time period. Plaintiff Airoso experienced scalp irritation and hair loss after using DevaCurl Products.

29.    Defendant Deva Concepts, LLC is incorporated in Delaware with its principal place of business at 560 Broadway, Suite 206, New York, NY 10012.

## FACTUAL ALLEGATIONS

30.    At all relevant times, Defendant has marketed the No-Poo Product through national marketing and advertising campaigns as being "free of harsh ingredients," a complete replacement for traditional shampoo that creates healthy curly hair without color fading, and as a "game-changing alternative to traditional shampoo."[16]

31.    On Defendant's website, it gives a three-step process for using the No-Poo Product and the DevaCurl One Condition® Original conditioner. Step one is "Wet curls and apply a generous amount to your scalp, scrubbing it in. Remember it won't lather, but it's still working!"[17]

32.    For step two it states, "Rinse thoroughly by scrubbing your scalp and letting the water move No-Poo Original through your ends."[18]

33.    Step three states, "Follow with One Condition® Original for additional moisture."[19]

34.    However, despite using Defendant's three step process, the No-Poo Product causes users to sustain scalp irritation, hair loss, and/or balding during normal use. Users have hair fall out in varying degrees during and immediately after use. The

---

[16] https://www.devacurl.com/us/curl-101/product-philosophy
[17] https://www.devacurl.com/us/products/cleansers/no-poo-original/v/29767841742930 (last visited Jan. 22, 2019).
[18] *Id.*
[19]*Id.*

---

CLASS ACTION COMPLAINT

hair loss, scalp irritation and balding suffered by Plaintiffs and Class Members is embarrassing and can be extreme in certain instances.

35.    The hair loss suffered by Plaintiffs and Class Members is not limited to the No-Poo Product. Indeed, many consumers, including Plaintiffs, have experienced hair loss, "shedding" and/or "thinning" after using Defendant's Products. Some users have had hair fall out in "clumps" and have suffered extreme distress as a result.

36.    Consumers of the Products pay a premium for them far and above what normal hair care products cost. For example, Defendant's No-Poo Product sells for forty-six dollars ($46.00) as compared to similar retail products sold at Target for as little as three dollars and ninety-nine cents ($3.99)[20]—a difference of more than forty-two dollars ($42.00).

37.    Consumers pay a premium for Defendant's Products because of the benefits Defendant claims they provide above and beyond normal hair care products. For example, in respect to Defendant's No-Poo Product, Defendant claims that the No-Poo Product is "Sulfate Free," that it is used to "gently cleanse," that it is not "harsh" or made with "harsh ingredients," that it gives "your curls what they need and nothing they don't," and that it comes with benefits such as the ability to keep hair from drying out and maintain composure.

38.    However, neither the product packaging nor any other advertising from Defendant warns users that the Products cause scalp irritation, excessive shedding, hair loss, thinning, breakage, and/or balding, or any related injury during normal use. For example, nowhere on the labeling of the No-Poo Product does it mention scalp

---

[20] *Compare* https://www.sephora.com/product/no-poo-P378324?skuId=1784578&om_mmc=ppc-G G_1918213323_70847768576_pla419288853760_1784578_353573794076_9021734_c&country_ switch=us&lang=en&gclsrc=aw.ds&ds_rl=1261471&gclid=EAIaIQobChMItJr6jNG_5wIVRtbACh 3WQw2KEAYYBCABEgLOjvD_BwE *with* https://www.target.com/p/suave-professionals-2-in-1-shampoo-and-conditioner-32-fl-oz/-/A-75560945.

CLASS ACTION COMPLAINT

irritation, excessive shedding, hair loss, thinning, breakage, and/or balding, or any related injury during normal use:



---

[21] https://www.amazon.com/gp/product/B0030LF1KA?pf_rd_p=ab873d20-a0ca-439b-ac45-cd78f07a84d8&p f_rd_r=7JK77ENMJZXVFMJHKQWJ  (last visited Jan. 13, 2020).





---

[22] https://www.ulta.com/no-poo-original-zero-lather-conditioningcleanser?productId=xlsImpprod 3960027 (last visited Jan. 13, 2020).

[23] Id.

[24] https://www.amazon.com/gp/product/B0030LF1KA?pf_rd_p=ab873d20-a0ca-439b-ac45-cd 78f07a84d8&pf_rd_r=7JK77ENMJZXVFMJHKQWJ (last visited Jan. 13, 2020).

[25] Id.

39.     Similarly, nowhere on any of the packaging of the other of the Products does it state that scalp irritation, excessive shedding, hair loss, thinning, breakage, and/or balding, or any related hair injury occurs from normal use of the Products.[26]

40.     With regard to its One Condition® Original product, at all relevant times, Defendant has marketed this product through national marketing and advertising campaigns as a premium product that is "free of harsh ingredients" and made with "nourishing, hydrating ingredients."

41.     Defendant's website states "When it comes to curls, it's all about condition, condition, condition. So apply, rinse and repeat as often as needed!"[27]

42.     Incredibly, on Defendant's website, Defendant claims that shedding of hair is "normal": If you have curly hair, chances are you've dealt with hair shedding. **For most of us, it can be concerning when hair falls out on a daily basis, but it's totally normal.** But, what causes hair shedding? How much hair loss it too much? And, how can you prevent it? Today we're here to give you the lowdown on everything you need to know about hair shedding.[28]

43.     Defendant further explains hair loss is more prominent in curly-haired women because "Sadly, shedding is more common with curly-haired gals because we don't wash or brush our hair as often as our straight hair counter parts.'[29]

44.     Defendant further attributes shedding to "giving birth, stress, scalp buildup, dandruff, losing weight, certain illnesses, and more."[30]

45.     Defendant states that "If you're losing more than 100 strands of hair per day, you're dealing with excessive shedding, which is also fairly common."[31]

---

[26] *See* Appendix A attached hereto.
[27] https://www.devacurl.com/us/products/conditioners/one-condition-original/v/29778541346898
[28] https://www.devacurl.com/blog/hair-shedding-101/ (last visited Jan. 22, 2019).
[29] *Id.*
[30] *Id.*
[31] *Id.*

46.    Further, Defendant claims that shedding is not preventable. On its website it states:

**Can I prevent shedding?**

In short, not entirely. While you can lessen the amount of hairs that shed, you'll never be able to completely stop shedding. See your hairstylist or dermatologist if you're really concerned.[32]

47.    Defendant further includes a list of recommendations to lessen shedding. None of the recommendations to reduce shedding include ceasing the use of the No-Poo Product or any of the Products:

**How can I lessen the shedding?**

1. Find the right cleanser and conditioner for your curl type. This ensures that your curls won't dry out or be damaged which can lead to shedding.

2. Remove build up. Product build up and dandruff can block your roots and lead to shedding, so be sure to clarify and exfoliate.

3. Make sure to detangle your hair every time you finish washing your hair. Using a pre-poo (like Wash Day Wonder) before cleansing and finger detangling afterwards can make a world of difference.[33]

48.    Above all, far from being the panacea promised by Defendant, the Products cause scalp irritation, excessive shedding, hair loss, thinning, breakage, and/or balding. The hair loss is not *de minimis*—consumers, who suffer hair loss often lose significant amounts of hair-and the hair loss persists as long as the user uses the Products.

---

[32] *Id.*
[33] *Id.*

CLASS ACTION COMPLAINT

49.     Many consumers who suffered scalp irritation, excessive shedding, hair loss, thinning, breakage, and/or balding from the Products saw their symptoms stop by discontinuing their use of the Products.

50.     Every consumer who purchased the Products without the true facts about the Products and disclosure of the inherent health risks prior to purchase was injured at the point of sale when, instead of obtaining safe, natural, proven, guaranteed to promote hair growth, strengthening, and conditioning cleanser, consumers obtained Defendant's unreasonably dangerous and defective Products. Consumers have been further injured by way of requiring expensive professional hair treatment and medical treatment as a result of injuries caused by the Products.

51.     By marketing, selling and distributing the Products from New York to purchasers throughout the United States, Defendant made actionable statements that the Products were free of defects and safe and fit for their ordinary intended use and purpose.

52.     By marketing, advertising, selling and distributing the Products from New York to purchasers throughout the United States, Defendant made actionable statements that the ordinary use of the Products would not involve undisclosed safety risks. Further, Defendant concealed what they knew or should have known about the safety risks resulting from the material defects in the Products.

53.     Defendant engaged in the above-described actionable statements, omissions and concealments with knowledge that the representations were false and/or misleading and likely to mislead reasonable consumers. Alternatively, Defendant was reckless in not knowing that these representations were false and misleading at the time they were made. Defendant had and has exclusive access to data pertaining to the Products' defect that Plaintiffs and members of the proposed Classes could not and did not have.

CLASS ACTION COMPLAINT

54.    Therefore, Plaintiffs, on behalf of themselves, the Nationwide Class, and the California Subclass, hereby bring this action for violations of various state and federal laws.

### I.    Defendant's Misrepresentations and Omissions are Material to Consumers

55.    Consumers seek out Defendant's Products specifically for the benefits that Defendant claims they provide—namely, to promote healthier hair than other traditional cleansers and conditioners. Consumers purchase the Products due to Defendant's claim they will not dry out hair and maintain maximum color.

56.    Consumers also pay a premium for the Products over comparable hair products on the market.

57.    Defendant misleads consumers into thinking they purchased a premium product with greater health benefits and even say that excessive shedding is common, normal and non-preventable; however, users have revealed that in fact the Products cause hair loss, scalp irritation, thinning, breakage, balding during normal use. Further, consumers have also shown that changing from using the Products eliminates shedding.

58.    Risk of hair loss, scalp irritation, thinning, breakage, or balding are material risks to consumers.

59.    Failing to include hair loss, scalp irritation, thinning, breakage, balding, on the labeling, product packaging, and by misleading customers by stating that shedding is "normal," "common," and "non-preventable" are material misrepresentations for consumers of the Products at issue here.

60.    Defendant further misleads consumers into thinking they can and should use unlimited amounts of the Products, through statements such as ""When it comes

14

to curls, it's all about condition, condition, condition. So apply, rinse and repeat as often as needed!"[34]

## II. Plaintiffs' Experiences

61.    Plaintiff Evangelina Airoso purchased a DevaCurl Share the Curly Love kit from Ulta Beauty in December of 2019. The kit included No-Poo Original, One Condition Original, Light Defining Gel, and Set it Free.

62.    Plaintiff Airoso relied on the representations on the packaging, labeling and online marketing of the Products when deciding to purchase and use them.

63.    During the two-week period of using the Products, Plaintiff Airoso began to notice the problems alleged herein. For example, while massaging the No-Poo Original onto her scalp, Plaintiff Airoso began to feel tingling followed by a warm sensation on her scalp. Plaintiff Airoso quickly began to rinse off the No-Poo Original but was left with irritation and sensitivity of the scalp. She followed up with the One Condition Original which did not calm the scalp irritation and sensitivity. After the first use of the Products, Plaintiff Airoso's scalp became very itchy. On her following wash day, Plaintiff Airoso used No-Poo Original and One Condition Original again. Plaintiff Airoso immediately began to experience unusual, excessive shedding and significant hair loss.

64.    Plaintiff Airoso discontinued use of the Products due to the irritation and hair loss, and thereafter switched to another brand of hair care products. Within days of switching brands, Plaintiff Airoso's scalp irritation subsided and within two weeks the hair loss had also subsided.

65.    Plaintiff Sandra Bowers purchased and used the Products, including the No-Poo Original and One Condition Original in February and March of 2019. Plaintiff Bowers purchased the Products from Amazon.

---

[34] https://www.devacurl.com/us/products/conditioners/one-condition-original/v/29778541346898

CLASS ACTION COMPLAINT

66.     When purchasing and using the Products, Plaintiff Bowers relied on information on the packaging, labeling, and marketing of the Products representing that the Products were made specifically for curly hair, and would help define and manage her curls.

67.     During the four months of using the Products, Plaintiff Bowers began to notice the problems alleged herein. For example, immediately after using No-Poo Original and One Condition Original, Plaintiff Bowers experienced scalp irritation in the form of small itchy bumps on her scalp. Plaintiff Bowers also began to notice thinning of the hair at her scalp.

68.     Plaintiff Bowers discontinued use of the Products due to the irritation and hair loss, switching to another brand of hair care products. Plaintiff Bowers has not experienced any scalp irritation in the ten months since switching brands, and, within days of switching, Plaintiff Bowers noticed her hair had begun to grow back in the thinned areas.

69.     Plaintiff Alaina Garcia last purchased and used the Products in May of 2018. Plaintiff Garcia purchased the Products from Ulta Beauty.

70.     Plaintiff Garcia relied on the information on the packaging, labeling and marketing of the Products, representing that the Product were made specifically for curly hair,  when deciding to purchase and use them.

71.     Within the first three uses of the Products, Plaintiff Bowers began to notice the problems alleged herein. For example, Plaintiff Garcia used No-Poo Original in May of 2018. Plaintiff Garcia experienced excessive shedding immediately during the washing process. A substantial amount of loose hair would wrap around Plaintiff Garcia's fingers and come out in her Wet Brush; she also had issues with the loose hair clogging her shower drain. After using the Products a few times, Plaintiff Garcia's hair began to look matted and she began experiencing scalp irritation, along with a very oily and flakey scalp.

CLASS ACTION COMPLAINT

72.     Plaintiff Garcia discontinued use of the DevaCurl Products due to the scalp irritation and hair loss, switching to another brand of hair care products. Immediately after switching brands, Plaintiff Garcia's scalp irritation and hair loss subsided.

73.     Plaintiffs are in the same Class as all other consumers who purchased Defendant's Products during the relevant time period. Plaintiffs and Class Members purchased worthless products that caused scalp irritation, hair loss, balding, or otherwise failed to perform as they were intended, *i.e.*, promoting healthy hair.

74.     Plaintiffs and the Class Members were in fact misled by Defendant's omissions and misrepresentations in respect to the Product. Plaintiffs and Class Members would have purchased other hair care products if they had not been deceived by the misleading and deceptive marketing and/or labeling of the Product.

**III.    Additional Common Facts**

75.     Plaintiffs' experiences are by no means isolated or outlying occurrences. Indeed, the internet is littered with stories of from other Class Members complaining of the same issues with the Products as Plaintiffs have alleged herein.

76.     As reported by ABC News, stylist and author Stephanie Mero, who goes by the handle 'thecurlninja' on social media, had been a longtime proponent of DevaCurl's Products, using them to maximize her customers' natural curls in her salon and encouraging her thousands of followers online to use them to help bring out their own curls.[35]

77.     According to the report, Ms. Mero says that changed when she started to see damage in her own hair. She eventually stopped using the Products and recommended that her clients do the same.

78.     Before and after photos show the damage that Defendant's Products caused to Ms. Mero's hair:

---

[35] https://abc7ny.com/5906690/.

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Before:

After:



CLASS ACTION COMPLAINT

79.    As further reported, Ms. Mero went on to create a Facebook group for others who believe DevaCurl is behind their hair damage. Currently, there are more than **22,400 members.**

80.    According to the report, Ms. Mero says she'll continue speaking out about the issue until DevaCurl issues a recall and the FDA takes the issue more seriously.[36]

81.    According to reports, Ms. Mero isn't alone. Another famous Youtuber with more than 200,000 subscribers, posted a video on January 31 where she speaks about her own experience with Defendant's Products. *See* Ayesha Malik, "Why I Stopped Using DevaCurl," https://www.youtube.com/watch?v=nuo8UCcyDhg.

82.    According to reports, the YouTuber tells viewers to immediately stop using the Products and apologizes for recommending them: "For the first time in my life I experienced dandruff," Malik said. "My scalp was on fire on some days, I didn't know what it was."[37]

83.    Similarly, a thread on Sephora originally posted in 2016 is now flooded with comments from customers complaining about the products and looking for answers.[38]

---

[36] https://www.abcactionnews.com/news/national/florida-hairstylist-among-customers-claiming-devacurl-products-caused-serious-damage
[37] https://www.abcactionnews.com/news/national/florida-hairstylist-among-customers-claiming-devacurl-products-caused-serious-damage
[38] https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/m-p/2411473

CLASS ACTION COMPLAINT

84.    The complaints are endless:



85.    Additional online complaints, dating back several years, are documented below:

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on March 20, 2016, updated on December 4, 2019: "I started using DevaCurl No Poo and One Condition in early January and used it until about a week ago. My hair was gorgeous but I wasn't able to get my hair really clean and developed some crazy dandruff which I've NEVER had a problem with before. I also noticed that I was shedding more hair than I was used to and that my hair seemed to be thinning a little. The shedding seem to get worse and that is the main reason that I stopped using it. When I switched back to Ogx coconut curls I was no longer shedding like crazy. Has anyone else had either of these issues while on these products?"

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on December 4, 2019: "I had long hair to my belly

CLASS ACTION COMPLAINT

button and after switching everything to deva curl I was in denial of my hair loss until my hairdresser pointed out how my hair was shedding super bad and how it was thinking out. It's been a couple months now and my hair is getting back to normal. Devacurl didn't work for me and now I'm dealing with the issues it caused. I would just cry because my hair was falling out in big clumps!! Now I just use Olaplex for most my hair needs. Olaplex #3 has been helping with the bonding of my hair. I feel so sad you had to go through this as well."

• https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on November 4, 2019: "The same thing happened to me a couple of years ago. I went to a Deva salon in Nashville, TN. After my appointment I purchased the product line that was used. From my 1st time using it at home my hair began shedding in large clumps. I tried it one more wash day and the same thing happened. Once I stopped using the products the clumps of hair ceased from falling out. I informed my stylist at the salon and she told one of the Level 3 stylists who has done my hair there before too. Both said they had never heard of what I had experienced. Of course I'm thinking if the large clumps of hair that came out were that noticeable to me that they had to have seen it when they did my hair."

• https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on November 7, 2019: "This is crazy reading these posts! I went "no poo" over 10 years ago and hit the curly girl method HARD! Used all DC products and my hair was ridiculously gorgeous. I'm a redhead and typically shed a lot so I didn't really think too much about it but I remember thinking damn this is a lot! My stylist at the time commented on increased shedding but just assumed it was normal. She started getting out an extra towel to wipe the hair off her hands after

CLASS ACTION COMPLAINT

washing my hair!! Gradually my hair started feeling dry and brittle, especially after ArcAngel and whatever the deep conditioner is. I started using new products and once I got rid of all DC products my hair was soft and happy again. Lesson learned!

• https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on November 6, 2019: "Hi - so glad I found your post and many others about how Deva Curl products ruined my hair !! First it looked good but within 4 months of use my hair became dry , brittle , broom like and was falling out !! I thought something was wrong with my health and started taking hair & skin vitamins and complained to the hair dresser who recommended deva curl to me. She had no idea it was the product that is absolutely horrible!! I spent over $100 on all the products and am now very upset trying to repair my hair ! If anyone has a shampoo they recommend let me know. For now I'm going back to using Quidad and praying my hair grows back thick again & my curls come back . Good luck to you & everyone out there who experienced what I did - I wish we could all sue them !!!"

• https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on November 8, 2019: "Me too! I thought it was menopause but it's Deva Curl products! There's a Facebook group about the issue too. I've emailed Deva Curl to return my products for a refund. Hope they will be responsible enough to do at least a refund. Horrible hair loss! Even my daughter had horrible hair loss.

• https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on September 12, 2019: "I am mind-blown at this thread. I was alwaysss the kid with hair so thick that hair stylists said something about it every time I had my hair cut. A year ago I noticed hair loss starting. And a year ago I started Deva Curl styling products. I don't

use their hair washing products. In June, I got my first Deva cut and she told me I have thin hair, and that was crazy to hear. It's now to the point that I have super thin areas on each side of my forehead, which made me go to the doctor. I had my hormones checked and all kinds of other blood work done, and it's all normal. I put the thoughts together and realized the hair loss started the same time I started Deva products. Then I found this thread. I am switching ASAP. Please, if anyone knows of cruelty-free products that give poofy, frizzy, curly hair definition and frizz control, help a girl out!! and Deva Curl... thanks for that medical bill!"

• https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on September 4, 2019: "Yes. I used the No Poo Shampoo and Conditioner for two months. Every time I used these products my hair fell out in clumps during the shampoo and conditioning process. Initially, I thought this was me loosing dead hair, but it was more than that. I discontinued use and my hair slowed down dramatically in falling out. I've continued to use the styling products, but I'm questioning this now. Some days my hair looks amazing, and other days these products make my hair look terrible (i.e. stringy, frizzy, broomstick dry, distorted curl patterns). I don't have heat damage because I love wearing my hair flowy and curly, so it's not that. I'm very confused by these experiences! Overall, I'm not convinced it's worth the money. I've been reading about other women who've had similar experiences, which is alarming. I hope all of us continue to share. Granted, there are pros to the styling products, but the cons are pushing me away. I've watched the videos on how to use the products and I'm skilled at styling my hair, but all of this isn't adding up for me. I hope this helps!"

• https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on August 15, 2019: "I have had the exact same issues.

23

When I started doing the curly girl process i lost a lost of hair, but I had not 'molted' for a while, so I wrote this off. I have continued to see molting and a lot of breakage as well, tho. The more concerning issue was the extreme itching and what was almost like flaky acne. Bumps on my scalp that hurt and itched. I have found that the Arc Angel gel is the worst offender and now that I have stopped using that it has gotten a lot better. The products make my hair look great, but I wish I knew what ingredient was causing this issue. Spent SO MUCH MONEY on these products and am not excited about buying more products that may have the same stuff in them that will cause the same issue."

• https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on August 13, 2019: "I had the same reaction, I never really had dandruff until using devacurl. I bought the shampoo & conditioner & didn't finish either. My head was super itchy along with dandruff & hair-loss. It did make my hair a little curlier but overall I thinks it's a terrible product."

• https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on May 19, 2019: "Yes! My hair is thin, fine, frizzy, and curly. Deva curl took half of the little bit of hair I had! I'm so upset! I finally grew my hair long. And now I have to crop it!"

• https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on August 12, 2019: "Hi, just wanted to let you know you are not alone! Other men and woman have had the same results from using Deva Curl products in this last years specially in 2019 which the major complaints are excessive hair loss, very dry and broken hairs and irritation. Like most people that call Deva Curl and complained they always get an answer that puts the blame on us and never the products. We have started a support group page on Facebook called "Hair and

24

Scalp Issues from Deva Curl Products - You are not Alone! We hope that you will join us and share your story so we can help many men and women around the world to help them figure out that they are not crazy, that is not their hormones or their old age and that there is a chance that it was their products they believed in that did this to them!"

• https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on April 10, 2019: "I'm having the exact same problem right now!!!!"

• https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on April 28, 2019: "Me too! I have been using the Devacurl no poo original and one condition since Christmas. I just recently had a deva cut and purchased the products recommended and I have been losing a lot of hair. My hair feels thinner, looks thinner, and my hair just is not the same."

• https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on March 24, 2019: "This can't be a coincidence. So I started using the no-poo almost exclusively on my wash days except for once a month when I used build up buster. Before that I alternated with the low poo Every other wash day and I never experienced shedding. Now that I started using mostly noo poo I'm seeing crazy shedding and breaking. I just switched to Oidad VitalCurl and can't report on results but first impressions my scalp feels clean and my hair looks nice. I also read online that noo-poo in hard water areas can cause PH imbalances in the hair, which can lead to shedding. I know I have hard water so I'm hoping by using new brands I'll be able to use DevaCurl again someday because for the first 2 years it was great."

• https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on February 10, 2019: "I've used DivaCurl for a while

CLASS ACTION COMPLAINT

and wonder now if it's making my hair thin out. It may be because I'm an little older, but I never had a problem before. The no-poo option works well for me because sulfates dry out my hair really bad. I think I'll switch over to Carol's Daughter, Mixed Chicks, or Shea Moisture to see what happens"

• https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on February 7, 2019: "I finally had to stop using their products, which broke my heart because they made my hair so beautiful...I really loved my unruly, curly, red Irish hair for the first time ever. I used it for probably two years. I started noticing my hair thinning, which was disturbing because I have always had extremely thick hair. Finally, I couldn't ignore it anymore this year when I could see through to my scalp, and I looked balding when my hair was wet. My ponytail is barely anything now, and my long hair (which I took such a long time to grow and care for) is limp and straggly looking when I don't take great care to fluff it up with thickening products. I was losing clumps of hair not just in the shower (where I would find whole chunks wrapped around my hands), but all over my bathroom floor, my bed, my couch...literally anywhere I had been, there was hair to clean up. . Horrifying at any age, and especially in your mid twenties. I have also developed very sensitive spots on my scalp, where I feel "pinpricks" in the front whenever wearing a ponytail (no matter how loose it is). I finally saw a dermatologist that specialized in women's hair loss. She agreed I had hair loss, but could not give a definitive answer as to why and started me on spironolactone to suppress any excess androgen (although my hormone levels were tested and found to be normal). Around the same time I switched from Deva products to more generic (but curly-girl friendly) products. After a couple months, I started to notice I had probably 1/5 the amount of hair loss, and

CLASS ACTION COMPLAINT

it finally seemed normal. No more sweeping up hair from the bathroom floor every single day. I was able to purchase the Deva gel again (the one I had been using in the interim shaped my curls nicely, but left it too frizzy and they fell out quickly). Each time I use this, I am right back to crazy clumps of hair in the shower and on the floor again. I realized something in the Devacurl *has* to be contributing to my hair loss over the last two years, and especially the last year before I finally got medical help. I don't know if it's an allergy or what, I have no known problems. But it's sort of a relief to see other people reporting these problems, too.

If anyone has recommendations for products with similar hold and frizz-taming capability, I really miss loving my hair. It used to be my proudest feature (after a lifetime of hating and fighting it), and now I feel like it's something I dislike about myself again."

• https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on December 1, 2017: "I'm having the same experience with DevaCurl o Decadence. It does an incredible job of detangling but I'm losing my hair. The folks here saying this is about perception don't get it. I started using this about two years ago and wasn't attributing it to the product because it was happening before that - from my attempts to detangle it. The devacurl worked for awhile, but then recently, and particularly in the last few months, my hair has been coming out in small clumps, from the root whenever I use it. I notice it because I've been washing and conditioning more regularly for a newer style. It doesn't happen when I use other conditioners, and I know the difference because when I would go back to the Decadence (for the detangling) my hair would be coming out in clumps in my hands. Also, when so many people are saying the same thing, clearly there is an issue, so it's not just about our perception. I'm done with this product. If anyone

CLASS ACTION COMPLAINT

has any detangling recommendations - not just products, but techniques too, I'm happy for them."

• https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on April 5, 2019: "Good morning, I could do, use your help. I'm going through the exact same thing. Except, I have never used this product. I was just wondering if you ever found a solution to your hair loss?"

• https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on October 17, 2019: "The same thing happened to me. Hair loss in Clumps, scalp irritation, and very noticeable loss in volume. I can see my scalp now. I feel like crying knowing that I have an entire box of products to throw away that cost me $100's. I'm terrified now of this happening with other "reputable" distributors. I can't believe this. It has really hit my self-esteem hard and my faith in curl brands.

• https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on February, 2, 2017: "I have been using this for a few months and I have lost TONS of hair, I even went to get my hormones checked, they were on point!! I have lost so much it's noticeable and looking completely different including parting all over... very unhappy and nervous , I am going to stop using it and see if it make a difference!

• https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on August 24, 2018: "My hair was so thick and it grew, I kid you not, nearly 3 inches a month. I measured. And I cut 6 inches off my very long hair to see if it would help curls form when I switched to Deva Curl. Well... after almost 2 months, my hair had gotten shorter. The breakage is horrible and it's falling out in clumps! Not just in the shower either!  I don't dye my hair, I don't use any heat on it at all, and I don't use any product except the wave maker stuff from Deva Curl.

So it had to be switching to Deva Curl. I also only wash my hair once a week. So I know i'm not over washing it. I was also using the buildup buster every 2 washes. I am nearly in tears from how much hair it caused me to lose. I'm going back to Lush ASAP. I'll never switch from Lush again. No matter what hair products I use from there, my hair stays beautiful, thick, and fast growing! I had to get supplements just to get my hair to start growing again... unfortunately my nails were still growing fast and strong. So I'm having to trim them 3 times a week. Ugh. Don't let anyone talk you into sticking with Deva Curl! If you get a feeling that it's messing your hair up, STOP! I wish I would have after hair started coming out the first shower... but I thought it was just because it wasn't as easy to work through my hair as my Lush products were. I'm heartbroken you guys."

• https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on September 22, 2016: "Wow! You lasted longer than me. I find Deva Curl to be too heavy for the hairstyle I want. Also, couldn't get my scalp clean with it. It used to cause oily spots. I feel that hair sheds everyday. You just notice it a lot more during shampoo'ing. Some people are not washing their hair for days so then it may seem like a lot of hair shedding at once."

• https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on May 2, 2019: "Me too I have never had thin hair its so thin and limp and disgusting. Im so sad"

• https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on September 22, 2016: "I feel like i have been loosing a lot of hair. I notice its thinner. When i use my no poo shampoo and conditioner, tons of hair comes out. I am curious too if thats the problem.

CLASS ACTION COMPLAINT

For now i am going to use my shea moisture shampoo and conditioner to see if shedding slacks off.

• https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on February 7, 2018: "I use every three days and my hair is shedding REALLY bad"

• https://curltalk.naturallycurly.com/discussion/136936/help-losing-hair-using-deva-products in December 2011: "A gal in my office and I are both losing handfuls of hair when using these products and I wasn't sure if it's the Deva products or the CG method in general causing the issue. I am a fine porous 3a / 3b and my friend has course 4a thick hair. Thanks!"

• https://curltalk.naturallycurly.com/discussion/136936/help-losing-hair-using-deva-products in November 2013: "it happens to me, too. I'm using Deva Products, and for the last 3 months, I'm losing hair handful after handful!"

• https://curltalk.naturallycurly.com/discussion/136936/help-losing-hair-using-deva-products in November 2013: "It happened to me using the no poo, because of the wheat protein (I'm a gluten free gal). Can't say that this would be the same case for you. Try switching up your products to see if it still happens. I used their low poo and one condition without any problems."

• https://curltalk.naturallycurly.com/discussion/136936/help-losing-hair-using-deva-products in March 2014: "I've been experiencing this also! I'm a little freaked out as I'm getting married in September, and I'm afraid I won't have any hair left by then! I've been using CG method for about 3 years. Was using WEN but found it to be too expensive to keep up. I switched to Deva about a year ago. I've been using Lo-Poo once a week, then One condition and styling cream every other day. Lately, I've been taking gobs of hair out of the shower drain. I haven't changed meds, or

CLASS ACTION COMPLAINT

anything else that I can think of, so I'm wondering what's going on. I'd make a switch to something else, but I want to be sure I'm still 100% sulfate and silicone free. Any suggestions?"

• https://curltalk.naturallycurly.com/discussion/136936/help-losing-hair-using-deva-products in March 2014: "Thanks! A quick observation this morning...I used Lo-Poo and One Cond today, and just now, I found myself itching my scalp. :sad1: HHmmmmm....I wonder how long I've been doing this subconsciously without noticing it! Even thought I only use it once a week, maybe it's the Lo Poo and not the One that's causing the issue. I'm going to try KMF Whenever, and also I'm reading a lot about Trader Joe's conditioners, so that may be another option to try."

• https://curltalk.naturallycurly.com/discussion/136936/help-losing-hair-using-deva-products in May 2016 "Hey, I really appreciate your post about the problems you are having with hair loss. I am new to the NaturallyCurly world and I am still working on being acclimated. Anyway, I too am having a similar problem. I was using a really nice shampoo and conditioner that had Keratin in it and I was loving it. Several months back, I saw a commercial for Wen and thought I would give it a try. After about a month of using it, my hair started to fall out. I switched back to a lathering shampoo until about five months ago. I went and tried a Deva Cut for the first time and bought all of the products. As I am sure most would agree, I fell in love with the stuff. My hair felt and looked great. Now, the ball of hair in my shower nearly doubles in size from one day to the next. I am not sure if it isn't clearing my scalp properly or it is causing more build up that usual but all I know is it has me concerned. I also had some itching when I first started using the products. That had me concerned but it went away after I started to use the products regularly. I have been a Ouidad girl from about 20 years,

31

give or take, and I just started to try new things. After this experience, I am not sure what to do. I am taking a break from Deva Curl for a little while and I will go back to my out routine and see if I notice a difference. I really think that is the only way to tell. I'm not sure what it is worth but I was using shampoo and conditioner by OGX called Brazilian Keratin Therapy. It was designed for women who get Brazilian Keratin Treatments, something I fell victim too as well. At any rate, it works beautifully in conjunction with my Ouidad products. I'm also not sure if my hair type has anything to do with all of this. My curls are tight and spirally. a pencil fits inside them perfectly. My hair is very fine but I have a lot of it!"

86.     Because of the pervasive complaints in respect to the Products, Defendant has knowledge of the alleged defects. Indeed, in January, Defendant issued a public statement acknowledging the alleged defects but **refused** to take responsibility for the problem and otherwise refused to cure the alleged defects and remedy consumers.[39]

## **CLASS ACTION ALLEGATIONS**

87.     Plaintiffs bring this action individually and as representatives of all those similarly situated, pursuant to Fed. R. Civ. P. 23, on behalf of the below-defined Class:

> **Nationwide Class: All persons in the United States who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

---

[39] https://www.abcactionnews.com/news/national/florida-hairstylist-among-customers-claiming-devacurl-products-caused-serious-damage

88.    Additionally, Plaintiffs bring this action on behalf of themselves and the members of the following California Subclass:

**California Subclass: All persons in California who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

89.    Specifically excluded from these definitions are: (1) any and all persons who purchased the Products directly from Defendant; (2) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (3) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (4) Class Counsel.

90.    As used herein, "Class Members" shall mean and refer to the members of the Nationwide Class and all Subclasses, including Plaintiffs.

91.    Plaintiffs seek only damages and equitable relief on behalf of themselves and the Class Members. Plaintiffs disclaim any intent or right to seek any recovery in this action for personal injuries, wrongful death, or emotional distress suffered by Plaintiffs and/or the Class Members.

92.    <u>Numerosity</u>: Although the exact number of Class Members is uncertain at this time and can only be ascertained through discovery, the number is great enough such that joinder is impracticable and likely in excess of 150,000. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.

93.    <u>Typicality</u>: The claims of the representative Plaintiffs are typical in that Plaintiffs, like all Class Members, purchased the Products that were manufactured and distributed by Defendant. Plaintiffs, like all Class Members, have been damaged by Defendant's misconduct in that, *inter alia*, they have incurred or will continue to incur damage as a result of overpaying for a product that contained a significantly lesser

1  amount of hemp extract than advertised. Furthermore, the factual basis of Defendant's
2  misconduct is common to all Class Members because Defendant has engaged in a
3  systematic fraudulent behavior, that was deliberate, includes negligent misconduct,
4  and results in the same injury to all Class Members.

5      94.   <u>Commonality</u>: Plaintiffs have numerous questions of law and fact
6  common to themselves and Class Members that predominate over any individualized
7  questions. These common legal and factual issues include:

8          a.    Whether the Products are defective such that they cause hair loss,
9                scalp irritation or balding;

10         b.    Whether and when Defendant had exclusive knowledge that the
11               Products are defective but failed to disclose the defect to the public;

12         c.    Whether the Products provide the benefits claimed by Defendant on
13               the labeling, packaging, and/or in the course of its marketing;

14         d.    Whether Defendants' conduct violated the California Unfair
15               Competition Law;

16         e.    Whether Defendant's conduct violated the California False
17               Advertising Law;

18         f.    Whether Defendant's conduct constituted a breach of applicable
19               warranties;

20         g.    Whether Defendant's acts and omissions make it liable to Plaintiffs,
21               the Class, and the California Subclass for negligence and strict
22               products liability;

23         h.    Whether Defendant engaged in unfair, deceptive, unlawful and/or
24               fraudulent acts or practices in trade or commerce by objectively
25               misleading Plaintiffs and putative Class and Subclass Members;

26         i.    Whether Defendant's conduct, as alleged herein, was likely to mislead
27               a reasonable consumer;

28

CLASS ACTION COMPLAINT

j.      Whether Defendant's statements, concealments and omissions regarding the Products were material, in that a reasonable consumer could consider them important in purchasing the Products;

k.      Whether, as a result of Defendant's omissions and/or misrepresentations of material facts, Plaintiffs and members of the Class and Subclass have suffered an ascertainable loss of monies and/or property and/or value; and

l.      Whether Plaintiffs and Class Members are entitled to monetary damages, injunctive relief, and/or other remedies and, if so, the nature of any such relief.

95.    <u>Adequate Representation</u>: Plaintiffs will fairly and adequately protect the interests of Class Members. Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously.

96.    <u>Predominance and Superiority</u>: Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Defendant's misconduct. Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

CLASS ACTION COMPLAINT

97.     Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class appropriate.

## COUNT 1

### VIOLATIONS OF MAGNUSON-MOSS WARRANTY ACT

### 15 U.S.C. § 2301, *et seq.*

### (On Behalf of The Nationwide Class)

98.     Plaintiffs bring this count on behalf of themselves and the Nationwide Class and repeat and re-allege all previous paragraphs, as if fully included herein.

99.     The Products are consumer products as defined in 15 U.S.C. § 2301(1).

100.    Plaintiffs and Class Members are consumers as defined in 15 U.S.C. § 2301(3), and are persons entitled under the applicable state laws to enforce against the warrantor the obligations of its express and implied warranties.

101.    Plaintiffs purchased Products costing more than five dollars ($5.00) and their individual claims are greater than twenty-five dollars ($25.00) as required by 15 U.S.C. §§ 2302(e) & 2310(d)(3)(A).

102.    Defendant is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) & (5).

103.    The Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1), provides a cause of action for any consumer, who is damaged by the failure of a warrantor to comply with a written or implied warranty.

104.    Defendant made promises and representations in an express warranty provided to all consumers, which became the basis of the bargain between Plaintiffs, Class and Subclass Members and Defendant.

105.    Defendant's written affirmations of fact, promises and/or descriptions as alleged—including promises that the Products promote healthy hair, are "free of harsh ingredients," "made with nourishing, hydrating ingredients," "free of sulfates, parabens, and silicones to gently cleanse curls," sourced from "the highest-quality,

CLASS ACTION COMPLAINT

good-for-you ingredients from around the world," and that they give "your curls what they need and nothing they don't,"[40] —are each a "written warranty." The affirmations of fact, promises, and/or descriptions constitute a "written warranty" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(6).

106.   Defendant also advertises, markets, and promotes its Products, including but not limited to on its website, as coming with a "satisfaction guarantee," which states that if a consumer/purchaser is not "completely satisfied with a DevaCurl product that you purchased from us or one of our authorized resellers" "for any reason," Defendant will allow for a return and provide a full refund of the purchase price.[41] The complete satisfaction guarantee constitutes a "written warranty" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(6).

107.   Further, Defendant provided Plaintiffs and the other Nationwide Class Members with an implied warranty of merchantability in connection with the purchase of the Products that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7).

108.   As a part of the implied warranty of merchantability, Defendant warranted to Plaintiffs and Class Members that the Products were of merchantable quality (*i.e.*, a product of a high enough quality to make it fit for sale, usable for the purpose it was made, of average worth in the marketplace, or not broken, unworkable, contaminated or flawed or containing a defect affecting the safety of the product), would pass without objection in the trade or business, and were free from material defects, and reasonably fit for the use for which they were intended.

109.   Defendant breached all applicable warranties, as described in more detail above, and is therefore liable to Plaintiffs and the Nationwide Class pursuant to 15 U.S.C. § 2310(d)(1). Without limitation, the Products suffer from latent and/or

---

[40] https://www.devacurl.com/us/curl-101/product-philosophy; https://www.devacurl.com/us/curl-101/product-philosophy/ingredient-glossary
[41] https://www.devacurl.com/us/faq#shipping

CLASS ACTION COMPLAINT

inherent defects that cause substantial hair loss, hair breakage, and scalp irritation, rendering the Products unfit for their intended use and purpose. This defect substantially impairs the use, value and safety of the Products.

110.   Any effort to limit the implied warranties in a manner that would exclude coverage of the Products is unconscionable, and any such effort to disclaim, or otherwise limit, for the defective Products is null and void. Any limitations on the warranties are procedurally unconscionable. There was unequal bargaining power between Defendant, on the one hand, and Plaintiffs and the other Nationwide Class Members, on the other. Moreover, any limitations on the warranties are substantively unconscionable. Following early reports of injuries caused by the Products, including multiple complaints to the FDA beginning in February 2018, Defendant knew that the Products were defective and would continue to pose safety risks. Defendant failed to disclose the product defect to Plaintiffs and the Nationwide Class Members. Thus, Defendants enforcement of the durational limitations on those warranties is harsh and shocks the conscience.

111.   Plaintiffs and each of the other Nationwide Class Members have had sufficient direct dealings with Defendant to establish privity of contract.

112.   Nonetheless, privity is not required here because Plaintiffs and each of the other Class Members are intended third-party beneficiaries of contracts between Defendant and its third-party retailers, and specifically of the implied warranties. Third-party retailers such as Ulta Beauty and Amazon were not intended to be the ultimate consumers of the Products and have no rights under the warranty agreements provided with the Products; the warranty agreements were designed for and intended to benefit consumers.

113.   All conditions precedent to seeking liability under this claim for breach of express and implied warranty have been performed by or on behalf of Plaintiffs and others in terms of paying for the goods at issue.

CLASS ACTION COMPLAINT

114.   Pursuant to 15 U.S.C. § 2310(e), Plaintiffs and the Nationwide Class are entitled to bring this class action and are not required to give Defendant notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs and the Nationwide Class pursuant to Fed. R. Civ. P. 23.

115.   Furthermore, affording Defendant an opportunity to cure its breach of written warranties would be unnecessary and futile here. Defendant was placed on reasonable notice of the defect in the Products and breach of the warranties based on numerous complaints received directly and indirectly from Plaintiffs and the Nationwide Class, including without limitation multiple complaints to the FDA beginning in February 2018, and have had ample opportunity to cure the defect for Plaintiffs and the Nationwide Class, but have failed to do so, instead denying the claims and putting out public statements denying that there are any issues with the Products. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs and the Nationwide Class resort to an informal dispute resolution procedure and/or afford Defendant a reasonable opportunity to cure the breach of warranty is excused and thereby deemed satisfied.

116.   While notice is not required (for the reasons set forth above), on February 7, 2020, Plaintiffs sent a letter to Defendant giving notice of its violations of its express and implied warranties and demanding that Defendant correct such violations.

117.   Defendant's breaches of warranty have caused Plaintiffs and the other Nationwide Class Members to suffer injuries, paying for defective Products, and entering into transactions they would not have entered into at all, or not for the consideration paid. As a direct and proximate result of Defendant's breaches of warranty, Plaintiffs and the Nationwide Class have suffered damages and continue to suffer damages, including economic damages in terms of the cost of the Products and the cost of efforts to mitigate the damages caused by same.

CLASS ACTION COMPLAINT

118.   Pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Nationwide Class Members are also entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Nationwide Class Members in connection with the commencement and prosecution of this action.

## COUNT 2

## BREACH OF EXPRESS WARRANTY

### (On Behalf of The Nationwide Class)

119.   Plaintiffs bring this count on behalf of themselves and the Nationwide Class and repeat and re-allege ¶¶ 1-97, as if fully included herein.

120.   Defendant sold and Plaintiffs purchased the Products from authorized resellers of Defendant's products.

121.   Defendant represented in its marketing, advertising, and promotion of the Products that the Products promote healthy hair, and are "free of harsh ingredients," "made with nourishing, hydrating ingredients," "free of sulfates, parabens, and silicones to gently cleanse curls," sourced from "the highest-quality, good-for-you ingredients from around the world" and that they give "your curls what they need and nothing they don't."[42]

122.   Defendant also advertises, markets, and promotes its Products, including but not limited to on its website, as coming with a "satisfaction guarantee," which states that if a consumer/purchaser is not "completely satisfied with a DevaCurl product that you purchased from us or one of our authorized resellers" "for any reason," Defendant will allow for a return and provide a full refund of the purchase price.[43]

---

[42] https://www.devacurl.com/us/curl-101/product-philosophy
[43] https://www.devacurl.com/us/faq#shipping

CLASS ACTION COMPLAINT

123.   Defendant made these representations to specifically induce Plaintiffs and Class Members to purchase the Products.

124.   Defendant's representations that the Products constituted part of the basis of the bargain between Defendant and Plaintiffs (and Class Members).

125.   Each of these representations and the complete satisfaction guarantee constitutes an express written warranty.

126.   Defendant breached its express warranties because the Products suffer from a latent and/or inherent defect that causes them to produce substantial hair loss and scalp irritation, rendering the unfit for their intended use and purpose. This defect substantially impairs the use, value and safety of the Products.

127.   The latent and/or inherent defect at issue herein existed when the Products left Defendant's possession or control and was sold to Plaintiffs and Class Members. The defect was undiscoverable by Plaintiffs and the Class Members at the time of purchase of the Products.

128.   While Defendant expressly disavows all warranties or representations, this disavowal is limited by its own plain language to "any products or services ordered or provided via the [Defendant's] website.[44]  None of the Products at issue in this case (including those purchased by the Plaintiffs) were products "ordered or provided via the [Defendant's] website," and all persons who purchased the Products from Defendant's website are expressly excluded from the putative Class and Subclass.

129.   Plaintiffs and the Nationwide Class are entitled to bring this class action and are not required to give Defendant notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs and the Nationwide Class pursuant to Fed. R. Civ. P 23.

---

[44]  https://www.devacurl.com/us/terms-conditions

CLASS ACTION COMPLAINT

130.    Furthermore, affording Defendant an opportunity to cure its breach of written warranties would be unnecessary and futile here. Defendant was placed on reasonable notice of the defect in the Products and breach of the warranties based on numerous complaints received directly and indirectly from Plaintiffs and the Nationwide Class, including without limitation multiple complaints to the FDA beginning in February 2018, and have had ample opportunity to cure the defect for Plaintiffs and the Nationwide Class, but have failed to do so, instead denying the claims and putting out public statements denying that there are any issues with the Products.[45] Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs and the Nationwide Class resort to an informal dispute resolution procedure and/or afford Defendant a reasonable opportunity to cure the breach of warranty is excused and thereby deemed satisfied.

131.    While notice is not required (for the reasons set forth above), on February 7, 2020, Plaintiffs sent a letter to Defendant giving notice of its violations of its express and implied warranties and demanding that Defendant correct such violations.

132.    As a direct and proximate result of Defendant's breaches of these express warranties, Plaintiffs and Class Members have been damaged because they did not receive the products as specifically warranted by Defendant. Plaintiffs also paid a premium for Defendant's Products that did not conform to Defendant's express warranties.

## COUNT 3

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### (On Behalf of The Nationwide Class)

133.    Plaintiffs bring this count on behalf of themselves and the Nationwide Class and repeat and re-allege ¶¶ 1-97, as if fully included herein.

---

[45] https://www.devacurl.com/us/deva-community-statement

CLASS ACTION COMPLAINT

134.  U.C.C. § 2-314 states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."

135.  U.C.C. § 2-314 has been adopted in California under the Cal. Com. Code § 2314, and in 35 other states.

136.  As set forth above, Plaintiffs have standing to pursue this claim as they have suffered injury in fact and have lost money or property as a result of Defendant's actions.

137.  Defendant is a "merchant" within the meaning of U.C.C. § 2-314 because it deals in the sale of the Products and holds itself out as "having knowledge or skill peculiar to" haircare products such as the Products at issue.

138.  Defendant sold and Plaintiffs purchased the Products from authorized resellers of Defendant's products.

139.  By placing such products into the stream of commerce, and by operation of law under Cal. Com. Code § 2314, Defendant impliedly warranted to Plaintiffs and Class Members that the Products were of merchantable quality (*i.e.*, a product of a high enough quality to make it fit for sale, usable for the purpose it was made, of average worth in the marketplace, or not broken, unworkable, contaminated or flawed or containing a defect affecting the safety of the product), would pass without objection in the trade or business, and were free from material defects, and reasonably fit for the use for which they were intended.

140.  Defendant breached the implied warranty of merchantability because the Products suffer from a latent and/or inherent defect that causes them to produce substantial hair loss and scalp irritation, rendering the unfit for their intended use and purpose.  This defect substantially impairs the use, value and safety of the Products.

141.  The latent and/or inherent defect at issue herein existed when the Products left Defendant's possession or control and was sold to Plaintiffs and Class

CLASS ACTION COMPLAINT

1   Members. The defect was undiscoverable by Plaintiffs and the Class Members at the
2   time of purchase of the Products.

3   142.   Defendant has misled consumers into believing the Products were
4   "Sulfate Free," that they are used to "gently cleanse," that they are not "harsh" or
5   made with "harsh ingredients," and that hair loss and shedding (even excessive
6   shedding) was "common," "normal," and "not preventable." Defendant took
7   advantage of Plaintiffs' and the Classes' trust and confidence in its brand, and
8   deceptively sold the Products, knowing that they caused hair loss, shedding, and scalp
9   irritation.

10   143.   Defendant's intended beneficiaries of these implied warranties were
11   ultimately Plaintiffs and the Classes, not distributors who sold the Products.
12   Moreover, Defendant exercises substantial control over which outlets can carry and
13   sell the Products, which are the same places that Plaintiffs purchased them. In
14   addition, Defendant's warranties are in no way designed to apply to the distributors
15   that purchase the Products in bulk and then sell them on an individual basis to each
16   consumer. Individual consumers are the ones who ultimately review the labels, which
17   Defendant knows, prior to making any purchasing decisions. As a result, these
18   warranties are specifically designed to benefit the individual consumer who purchases
19   the Products.

20   144.   Plaintiffs and Class Members sustained damages as a direct and
21   proximate result of Defendant's breaches in that they paid a premium for the Products
22   that they would not have otherwise paid. Plaintiffs and the Classes also did not receive
23   the value of the Product they paid for—the Products are worthless or worth far less
24   than Defendant represents due to the latent and/or inherent defect that causes hair loss
25   and scalp irritation.

26   145.   Plaintiffs and the Classes have sustained, are sustaining, and will sustain
27   damages if Defendant continues to engage in such deceptive, unfair, and unreasonable
28   practices.

CLASS ACTION COMPLAINT

146.   Accordingly, Plaintiffs are entitled to injunctive relief, attorneys' fees and costs, and any other relief that the Court deems just and equitable.

147.   As a result of the breach of the implied warranty of merchantability, Plaintiffs and Class Members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and/or other relief as deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

## COUNT 4

### UNJUST ENRICHMENT

**(On Behalf of The Nationwide Class, and in the Alternative to Counts 1-3)**

148.   Plaintiffs bring this count on behalf of themselves and the Nationwide Class and repeat and re-allege ¶¶ 1-97, as if fully included herein.

149.   According to Defendant's website, New York law applies to all claims.[46]

150.   Plaintiffs conferred benefits on Defendant by purchasing the Products at a premium price.

151.   Defendant has knowledge of such benefits.

152.   Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class Members' purchases of the Products, because the Defendant will obtain the benefits conferred by Plaintiffs and the Class Members without adequately compensating Plaintiffs and the Class Members. Defendant failed to adequately compensate the Plaintiffs for the benefits conferred by providing the No-Poo Products without those products having the characteristics and benefits promised.

153.   Retention of those moneys under these circumstances is unjust and inequitable because: (a) Defendant falsely and misleadingly represented that the Products promoted healthy hair, were "Sulfate Free," that they are used to "gently cleanse," that they are not "harsh" or made with "harsh ingredients," and that hair loss and shedding (even excessive shedding) was "common," "normal," and "not

[46] https://www.devacurl.com/us/terms-conditions

CLASS ACTION COMPLAINT

preventable."; (b) Plaintiffs paid a price premium for the Products based on Defendant's false and misleading statements; and (c) the Products did not have the characteristics and benefits promised because of the latent and/or inherent defect that causes hair loss and scalp irritation.

154.   This has resulted in injuries to Plaintiffs and members of the Class because they would not have purchased (or paid a price premium) for the Products had they known of the latent and/or inherent defect that causes hair loss and scalp irritation in Defendant's Products.

155.   Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and members of the Class is unjust and inequitable, and because equity and good conscience requires restitution, Defendant must pay restitution to Plaintiffs and members of the Class for its unjust enrichment, as ordered by the Court.

## COUNT 5

### NEGLIGENCE – FAILURE TO WARN

### (On Behalf of The Nationwide Class)

156.   Plaintiffs bring this count on behalf of themselves and the Nationwide Class and repeat and re-allege ¶¶ 1-97, as if fully included herein.

157.   According to Defendant's website, New York law applies to all claims.[47]

158.   At all times referenced herein, Defendant was responsible for designing, formulating, testing, manufacturing, inspecting, distributing, marketing, supplying and/or selling the Products to Plaintiffs and the Class.

159.   At all times material hereto, the use of the Products in a manner that was intended and/or reasonably foreseeable by Defendant involved substantial risk of hair loss and scalp irritation.

---

[47] *Id.*

CLASS ACTION COMPLAINT

160.   At all times the risk of substantial hair loss and scalp irritation was known or knowable by Defendant, in light of the generally recognized and prevailing knowledge available at the time of manufacture and design, as described herein.

161.   Defendant, as the developer, manufacturer, distributor and/or seller of the Products, had a duty to warn Plaintiffs and the Class of all dangers associated with the intended use.

162.   After receiving multiple complaints of hair loss and scalp irritation, including multiple adverse event reports to the FDA, and after dozens (if not hundreds) of online postings reporting hair loss and scalp irritation after using the Products, a duty arose to provide a warning to consumers that use of the Products could result in hair loss or scalp irritation.

163.   Defendant was negligent and breached its duty of care by negligently failing to give adequate warnings to purchasers and users of the Products, including Plaintiffs and the Class, about the risks, potential dangers and defective condition of the Products.

164.   Defendant was negligent and breached its duty of care by negligently blaming other risk factors for hair loss, by telling consumers that hair loss and shedding was "common," "normal," and "not preventable," thereby concealing and failing to warn purchasers and users o f the Products, including Plaintiffs and the Class, about the risks, potential dangers and defective condition of the Products.

165.   Defendant knew, or by the exercise of reasonable care, should have known of the inherent design defects and resulting dangers associated with using the Products as described herein, and knew that Plaintiffs and Class members could not reasonably be aware of those risks. Defendant failed to exercise reasonable care in providing the Class with adequate warnings.

166.   As a direct and proximate result of Defendant's failure to adequately warn consumers that use of the Products could cause injuries such as hair loss, balding

and/or scalp irritation, Plaintiffs and the Class have suffered damages as set forth herein.

### COUNT 6

### NEGLIGENCE – FAILURE TO TEST

### (On Behalf of The Nationwide Class)

167.   Plaintiffs bring this count on behalf of themselves and the Nationwide Class and repeat and re-allege ¶¶ 1-97, as if fully included herein.

168.   According to Defendant's website, New York law applies to all claims.[48]

169.   Defendant did not perform adequate testing on the Products, which were defectively designed, formulated, tested, manufactured, inspected, distributed, marketed, supplied and/or sold to Plaintiffs and the Class.

170.   Adequate testing would have revealed the serious deficiencies in the Products in that it would have revealed the substantial hair loss and scalp irritation occasioned by use of the Products.

171.   Defendant had, and continues to have, a duty to exercise reasonable care to properly design—including the duty to test—the Products before introducing them into the stream of commerce.

172.   Defendant breached these duties by failing to exercise ordinary care in the design and testing of the Products, which it introduced into the stream of commerce, because Defendants knew or should have known the Products could cause substantial hair loss and scalp irritation.

173.   Defendant knew or reasonably should have known that Class members such as Plaintiffs would suffer economic damages or injury and/or be at an increased risk of suffering damage and injury, as a result of its failure to exercise ordinary care in the design of the Products by failing to conduct appropriate testing.

---

[48] *Id.*

CLASS ACTION COMPLAINT

174.   By reason of the foregoing, Plaintiffs and the Class experienced and/or are at risk of experiencing financial damage and injury.

175.   As a direct and proximate result of Defendants' failure to test the Products designed, formulated, manufactured, inspected, distributed, marketed, warranted, advertised, supplied and/or sold by the Defendant, Plaintiffs and the Class have suffered damages as described above.

## COUNT 7

### VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT, Cal. Civ. Code §§ 1750, *et seq.*

### (On behalf of the California Subclass)

176.   Plaintiffs identified above, individually and on behalf of the California Subclass, repeat and re-allege ¶¶ 1-97, as if fully alleged herein.

177.   The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*. ("CLRA"), is a comprehensive statutory scheme that is to be liberally construed to protect consumers against unfair and deceptive business practices in connection with the conduct of businesses providing goods, property or services to consumers primarily for personal, family, or household use.

178.   Defendant is a "person" as defined by Cal. Civ. Code §§ 1761(c) & 1770 and has provided "services" as defined by Cal. Civ. Code §§ 1761(b) & 1770.

179.   Plaintiffs and California Subclass members are "consumers" as defined by Cal. Civ. Code §§ 1761(d) & 1770 and have engaged in a "transaction" as defined by Cal. Civ. Code §§ 1761(e) & 1770.

180.   Defendant's unlawful conduct resulted in the sales of products and services to Plaintiffs and the California Subclass Members in violation of Cal. Civ. Code § 1770, including:

    a.   Representing that goods or services have characteristics that they do not have;

CLASS ACTION COMPLAINT

b.  Representing that goods or services are of a particular standard, quality, or grade when they were not;

c.  Advertising goods or services with intent not to sell them as advertised; and

d.  Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

181.  Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

182.  Had Defendant disclosed to Plaintiffs and California Subclass Members that they misrepresented Defendant's Products, omitted material information regarding the risk involved with use of the Products and true abilities of those Defendant's Products, and were otherwise engaged in common business practices that ultimately hurt consumers, Defendant would have been unable to continue selling defective Products. Instead, Defendant represented that its Products promoted healthy hair, were "free of harsh ingredients," "made with nourishing, hydrating ingredients," "free of sulfates, parabens, and silicones to gently cleanse curls," sourced from "the highest-quality, good-for-you ingredients from around the world," without disclosing their potential risks. Plaintiffs and the California Subclass Members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered with reasonable diligence.

183.  As a direct and proximate result of Defendant's violations of Cal. Civ. Code § 1770, Plaintiffs and California Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Defendant's Products, and increased time and expense in treating the damage caused by the use of Defendant's Products.

184.  Plaintiffs sent notice of their intention to seek damages via a letter dated February 7, 2020, in compliance with Cal. Civ. Code § 1782(a). Any further notice

CLASS ACTION COMPLAINT

would be futile because Defendant has yet to offer relief to the California Subclass, despite being on notice of its unfair, deceptive, and fraudulent conduct.

185.   Plaintiffs, individually and on behalf of the other California Subclass Members, seek all monetary and non-monetary relief allowed by law, including damages and punitive damages, declaratory relief, an order enjoining the acts and practices described above, attorneys' fees, and costs under the CLRA.

**COUNT 8**

**VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW,**

**Cal. Bus. & Prof. Code §§ 17200, *et seq.***

**(On behalf of the California Subclass)**

186.   The California Plaintiffs identified above, individually and on behalf of the California Subclass, repeat and re-allege ¶¶ 1-97, as if fully alleged herein.

187.   Defendant is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

188.   Defendant violated Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

189.   Defendant's "unfair" acts and practices include:

a.   Knowingly designing, developing, manufacturing, advertising, and selling Defendant's Products with false health claims and significant defects that result in health and safety risks when used so that consumers did not receive the benefit of their bargain;

b.   Marketing and selling Defendant's Products that relied upon false health claims, while at the same time exposing consumers to health and safety risks solely to increase profits;

c.   Making affirmative public representations about alleged benefits of Defendant's Products while, at the same time, not ensuring consumer health and safety with respect to use of the Products; and

CLASS ACTION COMPLAINT

     d.    Concealing material information from consumers regarding the true nature of the defects in Defendant's Products in order to impact consumer purchasing behavior.

190.  Defendant has engaged in "unlawful" business practices by violating multiple laws, including the CLRA, Cal. Civ. Code §§ 1780, *et seq.*, and California common law.

191.  Defendant's deceptive acts and practices include:

     a.    Knowingly designing, developing, manufacturing, advertising, and selling Defendant's Products with false health claims and significant defects that result in health and safety risks when used so that consumers did not receive the benefit of their bargain;

     b.    Marketing and selling Defendant's Products that relied upon false health claims, while at the same time exposing consumers to health and safety risks solely to increase profits;

     c.    Making affirmative public representations about the alleged benefits of Defendant's Products while, at the same time, not ensuring consumer health and safety with respect to use of the Products; and

     d.    Concealing material information from consumers regarding the true nature of the defects in Defendant's Products in order to impact consumer purchasing behavior.

192.  Defendant violated UCL § 17200's prohibition against engaging in unlawful acts and practices by engaging in false and misleading advertising and by omitting material facts from purchasers of Defendant's Products. As alleged more fully herein, Defendant's marketing and sale of Defendant's Products, and more specifically their failure to inform customers of the health and safety risks inherent in Defendant's Products, violated Cal. Civ. Code §§ 1750, *et seq.*, common law, and other statutory violations as alleged herein. Plaintiffs reserve the right to allege other violations of the law, which constitute other unlawful business acts and practices. As

1   alleged herein, Defendant continues to misrepresent the Products' abilities and

2   continues to deny that the Products pose health and safety risks, Defendant has not

3   recalled its Products nor provided any remedial efforts including a warning disclosing

4   their possible risks, and Defendant's conduct is ongoing and continues to this date.

5        193.   Defendant violated UCL § 17200's prohibition against unfair conduct by

6   failing to inform its customers about Defendant's Products' abilities and their

7   potential health and safety risks; engaging in a pattern or practice of concealing those

8   facts and continuing to sell those Defendant's Products despite its knowledge that

9   they are misrepresented and carry health and safety risks (including the risks of hair

10  loss, excessive shedding, and scalp irritation) - thereby depriving customers of the

11  value of Defendant's Products as represented. This conduct is substantially injurious

12  to consumers, offends public policy, is immoral, unethical, oppressive, and

13  unscrupulous as the gravity of the conduct outweighs any alleged benefit.

14  Specifically, the health and safety risks were outweighed by Defendant's profit

15  motive. Defendant engaged in this conduct at the expense of its customers' rights

16  when other, lawful alternatives were available (such as providing customers with full

17  information about Defendant's Products, including the known risks and potential side

18  effects of use, prior to purchase).

19       194.   Defendant engaged in this conduct to gain an unfair commercial

20  advantage over its competitors, seeking to avoid public knowledge of the abilities of

21  Defendant's Products and their defects to avoid damage to their sales or reputation.

22  Defendant withheld critical and material information from Plaintiffs and California

23  Subclass Members, competitors, and the marketplace, all to Defendant's unfair

24  competitive advantage.

25       195.   Defendant's business practices, as alleged herein, constitute fraudulent

26  conduct because they were likely to deceive, and did deceive, California Subclass

27  Members into purchasing Defendant's Products when those Products were

28

CLASS ACTION COMPLAINT

1   misrepresented and defective with health and safety risks and otherwise did not

2   perform as advertised.

3        196.   Defendant's representations and omissions were material because they

4   were likely to deceive reasonable consumers.

5        197.   As a direct and proximate result of Defendant's unfair, unlawful, and

6   fraudulent acts and practices, Plaintiffs and California Subclass Members were

7   injured and lost money or property, including from not receiving the benefit of their

8   bargain in purchasing Defendant's Products, and increased time and expense in

9   dealing with treating damages from the use of Defendant's Products.

10        198.   Defendant recklessly disregarded Plaintiffs and California Subclass

11   members' rights. Defendant's knowledge of the Defendant's Products' false claims

12   and health and safety risks put it on notice that the Defendant's Products were not as

13   it advertised.

14        199.   Plaintiffs and California Subclass Members seek injunctive and

15   declaratory relief, any other appropriate equitable relief, and an award of reasonable

16   attorneys' fees and costs under California Code of Civil Procedure § 1021.5.

17                              <u>**COUNT 9**</u>

18   **VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW**

19            **Cal. Bus. & Prof. Code §§ 17500, *et seq*.**

20              **(On behalf of the California Subclass)**

21        200.   The Plaintiffs identified above, individually and on behalf of the

22   California Subclass, repeat and re-allege ¶¶ 1-97, as if fully alleged herein.

23        201.   Defendant's acts and practices, as described herein, have deceived

24   and/or are likely to continue to deceive Class Members and the public. As described,

25   Defendant misrepresented Defendant's Products, concealed Defendant's Products'

26   defects, concealed the health and safety risk with use of Defendant's Products, and

27   also concealed and misrepresented the true nature of Defendant's Products.

28

CLASS ACTION COMPLAINT

202.   By their actions, Defendant disseminated uniform advertising regarding the Defendant's Products throughout the country, including in California. The advertising was, by its very nature, unfair, deceptive, untrue, and misleading within the meaning of Cal. Bus. & Prof. Code §§ 17500, *et seq*. Such advertisements were intended to and likely did deceive the consuming public for the reasons detailed herein.

203.   The above-described false, misleading, and deceptive advertising Defendant disseminated continues to have a likelihood to deceive in that Defendant failed to disclose the true nature of Defendant's Products. Defendant failed to instigate a public information campaign to alert consumers of the defects and, instead, continued to misrepresent the true nature of Defendant's Products, continuing to deceive consumers.

204.   Defendant continued to misrepresent to consumers that Defendant's Products were capable of certain benefits without disclosing health and safety risks. Had Defendant disclosed those issues, rather than falsely advertising Defendant's Products' abilities, consumers would have not purchased Defendant's Products, and would not pay an inflated price for Defendant's Products.

205.   In making and disseminating the statements alleged herein, Defendant knew, or should have known, its representations, advertisements, and statements were untrue and misleading in violation of California law. Plaintiffs and other California Subclass Members based their purchasing decisions on Defendant's omitted material facts. The revenues to Defendant attributable to Products sold in those false and misleading advertisements amount to hundreds of millions of dollars. Plaintiffs and California Subclass Members were injured in fact and lost money and property as a result.

206.   The misrepresentations and non-disclosures by Defendant of the material facts described and detailed herein constitute false and misleading advertising and, therefore, constitute violations of Cal. Bus. & Prof Code §§ 17500, *et seq*.

207.  As a result of Defendant's wrongful conduct, Plaintiffs and the California Subclass Members lost money. Plaintiffs and the California Subclass Members are therefore entitled to restitution as appropriate for this cause of action.

208.  Plaintiffs and California Subclass Members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices; injunctive and declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; and other appropriate equitable relief.

## **RELIEF DEMANDED**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek a judgment against Defendant, as follows:

a.  For an order certifying the Classes under Fed. R. Civ. P. 23 and naming Plaintiffs as representatives of the Classes and Plaintiffs' attorneys as Class Counsel;

b.  For an order declaring that Defendant's conduct violates the statutes referenced herein;

c.  For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

d.  For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e.  For prejudgment interest on all amounts awarded;

f.  For an order of restitution and all other forms of equitable monetary relief;

g.  For injunctive relief as pled or as the Court may deem proper; and

h.  For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of suit.

CLASS ACTION COMPLAINT

1

## **JURY TRIAL DEMANDED**

2        Plaintiffs demand a trial by jury on all claims so triable.

3

4

5     Dated: February 10, 2020                Respectfully submitted,

6

7

8                                        /s/ *Danielle L. Perry*

9                                        Danielle L. Perry (SBN 292120)
                                         Gary E. Mason*
10                                       J. Hunter Bryson*
                                         David K. Lietz*
11                                       **WHITFIELD BRYSON & MASON, LLP**
12                                       5101 Wisconsin Avenue NW, Suite 305
                                         Washington, DC 20016
13                                       Tel.: (202) 429-2290
14                                       Fax: (202) 429-2294
                                         gmason@wbmllp.com
15                                       dperry@wbmllp.com
                                         hunter@wbmllp.com
16                                       dlietz@wbmllp.com
17

18                                       Gary M. Klinger*
19                                       **KOZONIS & KLINGER, LTD.**
                                         227 W. Monroe Street, Suite 2100
20                                       Chicago, IL 60630
21                                       Tel.: (312) 283-3814
                                         Fax: (773) 496-8617
22                                       gklinger@kozonislaw.com
23

24

25    *pro hac vice to be filed*              *Attorneys for Plaintiffs*
26

27

28